The next two cases, Corio Juarez v. Bondi and Alvarado Cornejo v. Bondi, have been submitted on the briefs. The next case on the calendar for argument is Kors v. Swift Transportation. Good morning, Your Honors. Good morning. May it please the Court, John Ellis for Appellant Swift Transportation. I'd like to reserve four minutes for rebuttal. Your Honors, there are two mechanisms by which this Court should reverse the trial court's two remand orders, remanding this case to State Court. First, the Court should find that the District Court had no authority to order remand on a ground that plaintiff never raised and is inconsistent with the grounds that plaintiff did raise. In such a situation, the District Court has no authority to remand. And when a District Court remands without authority, for example here when it's on a non-procedural ground that is not raised by the plaintiff, the bar on reviewing remand orders that's in 28 U.S.C. 1447d does not apply. Mr. Ellis, I guess, at least in other contexts, we distinguish between presentation of arguments and presentation of issues. And the issue here was, was it timely or not? Why isn't the reason why it wasn't timely an argument rather than an issue? Your Honor, I think the reason it's an issue and not an argument is because the way this Court's precedents treat the timeliness issue is that there has to be some – in order for the defendant to have a 30-day window to remove, there has to be some triggering event, some service of some pleading or plea paper by the plaintiff or perhaps the court that would put the defendant on notice of subject matter jurisdiction. And if you don't have that, the defendant's free to remove at any time. So when the plaintiff comes forward with a motion and says this is not timely because there is a triggering event, which was – the plaintiff's view was that our own investigation could be the triggering event. That was the position they took in the trial court. They said our own investigation is the triggering event, which we knew by a date certain and that we had until April – I think it was – they had a date in April 2024 in which we had to remove. That's the ground for removal that we did not – or the ground for remand that we did not remove within 30 days of – It wasn't timely. Yes, Your Honor, but because of a very specific thing that happened. It was you were 30 days after X and then what the trial court did is came up with its own rationale to actually know you were 30 days after Y. But if we ever held that that makes a difference, you seem to rely – I don't hear you relying on it now that it was somehow sua sponte. This wasn't sua sponte. Our argument is that it is effectively sua sponte when the district court remands. There's a motion that it was untimely. Yes, but there was no motion by the plaintiff that argued that defendant failed to remove within 30 days of service of the complaint. And plaintiff agreed that the complaint did not put us on notice of subject matter jurisdiction. That was in their briefing. They agreed with us on that. And they said we had until April 2024 to remove, which is well more than 30 days after service of the complaint. But if Your Honors are concerned about this jurisdictional point, Your Honor's authority to hear this appeal, we do have separately filed a petition for permission to appeal under CAFA. We filed that actually before we filed our direct appeal. And there's no restrictions on Your Honors reviewing the remand order at issue here if you grant the petition for permission to appeal. Why is this under the factors for the petition? Why is this a distinctly CAFA problem? I mean, I think this is a rather ordinary case of how you decide whether it's removable or not on the four corners of the complaint. That's true of all civil cases that are removed. It's not a CAFA-specific issue that the statute seems to be addressing. Sure. So Coleman, which is the case that sets forth the factors for considering one of these petitions for permission to appeal, states that the four factors are a set of guidelines. They're not elements. You don't have to hit 1, 2, 3, 4, and 5 in order for this court to grant the petition for permission to appeal. They're a set of guidelines. And one of those is that it presents an important CAFA-related question. But there are others, such as does the district court's order appear erroneous, which I think it very clearly does here for the reasons we briefed and I'll get into in a minute. If the order appears erroneous, that is a factor in which the court should consider in granting the petition for permission to appeal. Whether the record has developed to extent that permits intelligible review, that's clearly satisfied here. We've pretty much briefed the issue in full both here and at the trial court. Whether this can be reviewed later is a factor. That's not going to be the case if the remand order is upheld. Yeah, I guess remand is kind of famously unreviewable. You're just not going to see as many cases addressing issues such as this. But again, that's a general problem. We've got a statute that's created in a special discretionary procedure for us to grant permission to review for CAFA purposes, not for general removal purposes. Sure, and Coleman does say that is one factor, whether the case presents an important CAFA-related question. And I think it does because this timing issue tends to come up an awful lot in CAFA cases because they are class actions, right? So you very – and you have this five million in controversy element, which is almost always going to require some estimation of the class size and an allegation. I wouldn't – if we could turn to that, I think that's – why wouldn't under Cuxhausen and other cases SWIFT be expected to kind of do the math? I mean so even if – I get that perhaps it was – there was a little bit of art in pleading several hundred given that the $9,000 figure was the most prominent. But, of course, it also cites California law that provides for statutory damages, which don't even seem to make it a close question if you've got a few hundred possible class members, which I think everyone agrees you had here. So why wouldn't you be required to not look, not do investigation into your own employee workforce or the class size, the sorts of things we've said you don't have to do, but just to look up the statutes and say, oh, these are California claims with statutory damages, and it's not going to take more than a few hundred, which is all they allege, to get us over five million? Well, Your Honor, for the statutory damages that Plaintiff alleged, it is going to take quite a bit more than a few hundred. I think the only specific statutory damages they alleged, there was some sort of $1,000 per person. I think wage statement damages cap out at $4,000 per person. 203 – Labor Code Section 203 penalties, they provide for 30 days of wages. But it depends on how many people have been let go, how many people are former employees in the last year. Well, $9,000 gets them close, and that's on the face of the complaint. And then it's a question of whether a few hundred there or a few thousand there adds up to real CAFA money. Yes, and what – so I would point to the case Harris v. Baker's Life, which points out there are three types of pleadings. There's a determinant complaint where it's clear and obvious that there's over five million in controversy, or I should rather say that the case is removable. There's one – there's a complaint where it is very clear that the case is not removable. And then there's an indeterminate complaint where it could be removable based on what's in the complaint, or it could not be. And I think that's what we have here. It could be removable if every class member was subject to this $9,000 training fee and that there's over 556 class members, but it could not be. And you have to look at what they've alleged, which is that it said that other class members incurred this $9,000 training fee. It doesn't say every class member. It says other class members, and that's different than other language in the complaint that says each class member hadn't been paid all minimum wages. For the $9,000 training fee, it just says other class members. And we know just from common sense, knowing what this training fee refers to is what it's referring to is a program that SWIFT has to allow people to obtain a commercial driver's license at a driver's school that only people who don't already have a commercial driver's license go to. And there's nothing in the complaint that indicates how many class members went to driving school, how many didn't. That's something we have to investigate. That's something we have to look at. It also – the allegation and the theory is that SWIFT terminated people within one year of their employment, and that somehow – that makes SWIFT then liable for the $9,000 training fee because I think the theory is they said they would forgive it. But then they fired people in bad faith, so it was not forgiven I think is the theory. But it's very clear that it's dependent on class members being terminated within a year of employment. And there's nothing on the complaint that indicates how many of these hundreds of class members were terminated within a year of employment or how many plaintiff alleges were terminated within a year of employment. We need to do our own investigation to figure that out. So this is a – this is at best an indeterminate case, a complaint. And going back to Harris v. Baker's life, the court clearly held that an indeterminate complaint does not start the 30 days to remove. Only the first type of complaint, only the complaint from which it is clear that the case is removable, will start the 30 days to remove. Counsel, how do you calculate the allegation regarding the four-year period of lost wages? How do you think that figures into the analysis of potential damages? Yes, Your Honor. So after Swift looked into it and saw how many class members there are and how many work weeks were at issue, at that point it became very apparent that the amount of controversy is well in excess of $5 million. But none of that information is the complaint. And what Harris says in other cases like Roth v. CHA and Rea v. Michael Stortz is that you have to determine notice of removability from the face of the complaint, from the four corners of the complaint, not on the defendant's own knowledge, not on any duty to make inquiry, but what's in the actual complaint. And there's no allegation of how many work weeks are at issue. There's no allegation of how many – For a four-year period, there was a failure to pay minimum wage. Do you agree that's the allegation? I do agree that they allege for a four-year period, for an indeterminate number of class members who worked an indeterminate amount of work weeks, there was a failure to pay wages. But the point is that those numbers, which you need to plug into the formula to get to over $5 million, are indeterminate from the complaint. And an indeterminate complaint does not start the time to remove. And I see I'm about three and a half minutes left, so I would like to reserve the rest for rebuttal.  Thank you. May it please the court, my name is Alfredo Torrijos, and I represent the plaintiff appellee in this matter, Christopher Kors. This appeal should be dismissed for lack of jurisdiction. The district court's order remanding the case is unrevealable under section 1447D because the district court acted below on a timely motion filed by my client challenging a procedural defect, the untimeliness of Swift's removal. Swift argues that the court acted sua sponte, but the record is clear. The court granted our motion. Mr. Torrijos, I guess given that the district court took a position that you didn't even take, why isn't this sufficiently debatable that we should grant the petition? You haven't filed a response to the petition. What's your position? With regard to the petition, Your Honor, first of all, I don't believe the Coleman factors would weigh towards granting the petition here. I believe that, first of all, this is not an unsettled area of capital law. It is a simple question of timeliness and the application of that. Second of all, I think— One that you hadn't identified in the trial court. That is correct, Your Honor. We did not identify it. Okay. We proceeded under a different theory, a different theory of timeliness, but a different theory that was not identified by us. But to touch on that point, Your Honor, the cases that my friend here is relying on, Kelton Arms, Corona Contreras, and Kenny, all of those cases, there was no motion filed. But importantly, this court, in deciding those cases, said effectively that the plaintiff had accepted federal jurisdiction. By not raising an issue of timeliness and seeking a remand, the basis there was that the plaintiff effectively conceded that. If the plaintiff files a motion to remand on the ground that there's no federal jurisdiction and the district court remands on the ground that the removal was untimely, do you think that—is that barred from appeal under 1447? Yes, Your Honor. I believe it would be barred in that situation. The case cited by defendants in their briefing, the northern district—let me see if I can get it here. So your view is that as long as there is some motion, like it doesn't matter what the motion says, the district court can go off and do something totally different. That that's enough to trigger the bar on appeal? I apologize, Your Honor. I may have misspoken. I agreed with the court's hypothetical there that the court—that that would not be the court acting in reaction to the motion. So we could review that? That could be reviewed. Okay. So then what we have here—I mean, you did make a motion based on a defect in removal procedure, but it's a totally different theory. They're set out in different provisions of the statute, right? The statute has the 30 days from the complaint in B2A and then 30 days from the filing of another paper in B3. Why isn't that different enough for us to say—effectively, you did not file a motion for remand on the basis of—or flip it around. What the district court did was not on the basis of a motion that you filed. Well, again, Your Honor, and this might be pedantic, but the court granted our motion, right? And the notice of our motion was based on Section 1446. We didn't determine and specifically state which section. Now, I completely concede that in our memorandum, we focused on 1446, the subsequent paper to the complaint section. But in addition to that, one thing that defendants have said— You specifically cited B3, right? Within the—yes, Your Honor. Counsel, may I ask you—you said appellate review is foreclosed under Section 1447? Yes, Your Honor. But the court ruled under 1446, didn't it? Yes, Your Honor, 1447 paragraph D is a paragraph that provides that a remand order based on a procedural defect is not reviewable. Well, but that's in that statute, 1447, and if the court relied on 1446, how can we say 1447 precludes a proposal to review? Yes, Your Honor, I think that the— The district court didn't rely on 1447. The district court relied on 1446, and then 1447 addresses—I'm trying to pull up the statute here, Your Honor— 1447 addresses specifically when an order of remand is issued for a procedural defect. So they're separate statutes, but 1447 doesn't provide the basis. The basis is under 1446C where the court has the authority to issue this in light of our motion. So to go back to the question Judge Johnstone asked you at the beginning, we have this petition under 1453. You don't dispute that we have jurisdiction to grant that and review this? You dispute whether we should under the Coleman factors, but we have the authority to do it, right? Your Honor, yes. Okay. You definitely have the discretion to review this. I would point out that here, because both a petition and an appeal were filed, and this court issued an OSC, where the response by plaintiff was just look at the petition. You know, that is broader, and it would give the court here everything it needs. The court discharged that OSC based on the Swift's arguments that, in fact, the district court here acted sua sponte. So because of that, Your Honor, you know, 15—excuse me, I lost it. Yeah, 1453, the discretionary appeal there for CAFA has a very tight timeline, right? Once the petition is approved, there has to be an order within 60 days with an optional 10-day extension there. The expectation there, of course, is that this will be resolved quickly. We have an appeal which has progressed as a matter of normal course as an appeal. So one of the common factors is prejudice, and here plaintiffs and the class members have been prejudiced by that continued delay here. I mean, that's a sunk cost. It is a sunk cost, Your Honor. It's done, and here we are. But I feel that at least the rationale or the spirit of 1453 is to resolve it quickly as a petition. And that simply wasn't done here. So whether the court has authority, I concede it does. It clearly does. But with regard to whether the Coleman factors should be applied here, I do think it's—one of those factors is— Well, why shouldn't we view this as involving particularly CAFA-related concern? CAFA has a much higher jurisdictional threshold than ordinary diversity jurisdiction or some of the other areas where we'd be looking at this. It's only going to occur in class actions. And the problem here arises under—it's a little Alice in Wonderland where each side is taking the exact opposite position they would have taken about where the case should end up. But you'd pleaded several hundred. You probably knew that if you'd pleaded $9,000 of damages over 600 class members, where you'd end up. It would be removable. So you didn't. But you didn't. Why isn't this something that we ought to try to sort out on the petition in terms of what—how to deal with this? This is always going to arise, and it seems to arise a lot, when you've got a few hundred class members seeking a few thousand dollars of damages. That seems quite common in class actions, hovering right around the 5 million point. Why can't we just use this opportunity to iron that out? Your Honor, I don't think there would be any expansion of the law on CAFA here. Kuckhausen directly addresses this issue. Well, Kuckhausen is—yes. In some ways it says you don't have to investigate, but you do have to do math. And your friend is saying that they didn't have to investigate. And you're saying now, as the district court said, but they do have to do math. The math wasn't apparent. They did have to do a little legal research in that first 30 days. They did have to make some inferences. Why is that enough to put them on notice in this quick CAFA window that they've got to remand?  So Kuckhausen taught us that defendants have to use reasonable intelligence in ascertaining removability. And this case is distinguished from Kuckhausen or the more recent decision by this court, the Morton v. Twitter, which is not a CAFA decision explicitly but was recently submitted to the court by a defendant. In those cases, there is no number. Here we have numbers. And as the court was intimating— Numbers calculated to be ambiguous, perhaps. I mean, you have a few hundred. I mean, the only numbers there, as I under—let me know if I'm missing something, setting aside what might be incorporated by reference in the California claims. Are there any other numbers here than 9,000 and—what was it? Over several hundred. Several hundred? Several hundred? No. Those are the two explicit numbers.  So in a large number of instances, that doesn't add up to 5 million. Not the majority. I mean, several hundred could be, what, 300, 400, 500, 600, 700, 800, so maybe a slight majority. But why is that enough if you didn't plead that? It seems like you're trying to get the benefit now of an ambiguity that you'd created in your pleading. It wasn't a strategic decision, Your Honor, but that makes no difference for the court's decision here. So it is what it is. The reason it doesn't is because several, even if you take several at the definition supplied by defendant, 300, you take the violation rate as, you know, Judge Miller here authored the Perez v. Rose Bank case, where it says, you know, violation rates, as long as it's reasonable, then we can apply it here. They're now saying, well, there's all these reasons why it wouldn't apply, but the violation rate might be a lot lower. But, you know, even 300 times 9,000 times the statutory penalties times minimum wages. Do you think they should be charged with notice on the statutory penalties just by pleading the statute and not pleading the amounts? Yes. I mean, there is no investigation of their own records there. I mean, to hold otherwise would say, you know, they don't need to know what the CAFA time is. I mean, that is a law that exists. I guess we also have the four years. Yes. But we don't know how many weeks that is. We don't know, I mean, do we know whether full time, how many weeks, are there hints? I mean, is that all we have? That is, again, Your Honor, yes. As far as numbers go, all we have is several hundred and then the $9,000, the training fee. And can you address the point that Mr. Ellis made that the complaint doesn't say that everyone was subject to the $9,000 and then he gave some reasons why consistent with the complaint maybe only some of them were. So what is the answer to that? The complaint doesn't, but it doesn't need to, defendants could take a violation rate as they did for the other causes of action. And it would be entirely reasonable to say that a violation rate for several hundred, you know, would apply over a four-year period. The question is whether the defendant can just hide his head in the sand. And as Judge Johnston correctly noted, the ambiguity was created by plaintiff, absolutely, in his pleading. But at the same time, defendants, and that's what Kuckhausen taught us, is they can't stick their head in the sand and avoid making every presumption that they possibly could in order to say, well, no, we didn't know it was removable until some indefinite period. Roth basically says that regardless of their investigation, once they say it's not triggered by the complaint or another pleading, they can remove up until the point of judgment, honestly. So that to me, Your Honor, is really what addresses that decision. And one last point I'd like to make, because my friend argues in the papers that they were prejudiced by not being able to address the issue by the district court, raised specifically in that that would be an indication towards saying it's sua sponte. In that case, excuse me, in this case, defendant's opposition addresses both of the triggers. It says there was no trigger with the complaint, there was no trigger after with the subsequent pleading. So that, I think, shows that, in fact, it's not sua sponte. They were addressing the issues because we raised, in general, 1446, the timing removal question. And with that, Your Honors, unless there's any questions, I thank you for your time and submit. Appears not. Rebuttal? Counsel, could you address the section 1447 issue that counsel raised and said that our appellate review is foreclosed under that statute? Yes, Your Honor. So that statute only bars review of appeals when the district court remands on a ground that is a cognizable ground for remand under the statute. And the way the Supreme Court and this court has interpreted that is if the district court remands on a procedural ground that is not raised by the plaintiff, then that falls without, that is beyond the district court's authority and therefore is not captured by the 1447D bar on removal. And I think Justice Miller's point was a good one, which is that the plaintiff's motion for remand was very specifically based on the section of the statute that says a subsequent paper, subsequent pleadings or papers will trigger 30 days and never argued that a different section of the statute, the one that says a complaint that discloses removability will trigger the statute and in fact conceded that the complaint did not trigger removability. Under those circumstances, I do believe that the district court's order was on a non-procedural ground, timeliness of removal, that was not raised by the plaintiff. On the Coleman issue, on the Coleman factors, I'm just going to read them real fast. It's the likelihood that the question will evade review if left for consideration only after final judgment. I believe we have that here. The question appears to be either incorrectly decided or at least fairly debatable. I think we've explained that the issue here was incorrectly decided. Whether the record is sufficiently developed and the order sufficiently final to permit intelligent review, I don't believe there's any dispute there. The balance of harms, I think that weighs in favor of the defendant here. We'll have lost our right to a federal forum. And then the presence of an important CAFA rated question. As Judge Johnston stated, this is an issue that comes up frequently in CAFA cases specifically because you have to add up a bunch of small damages dispersed across potentially thousands of class members. It's not like a non-CAFA case where it's going to be pretty clear from the face of the complaint that over $75,000 is in controversy. It's often going to be more clear that there's over $75,000. Because if you only have to do the math, then that suffices, correct? One only has to do the math to come to the conclusion that the monetary amount is met. That is correct, but we had to do more than do the math. We had to determine how many people were actually subject, but even potentially subject to this $9,000 training fee. We had to determine how many people were even potentially terminated within a year of employment. We had to determine what several hundred means. Did that require investigation? It did. In order to figure out how many class members there actually are, that could not be figured out from the complaint. All we know is that there's several hundred, which is consistent with 300. It's consistent with 400. It's consistent with 500. Harris says an indeterminate complaint that is consistent with removability and non-removability does not start the clock. I think Kuckhausen is pretty directly on point here. Kuckhausen, what was missing, what the defendant needed in order to remove that was not apparent from the complaint, was the value of these automobiles purchased from BMW. What the plaintiff had alleged was that the plaintiff's automobile was worth at least, I think it was $25,000. But he didn't allege what any of the other automobiles were worth, even though BMW obviously knows what its cars are worth. Even though they said it's a plausible enough guess that luxury German cars are going to cost more than $25,000, the point was it wasn't in the four corners of the complaint, so the defendant could not be charged with that knowledge for purposes of the timeline to remove. I think the same is true here with the class size, the number of work weeks at issue, the number of potentially unpaid hours at issue. The last point I just want to address real quickly is that Roth versus CHS Hollywood Medical Center actually discusses this issue of how it's really on the plaintiff to put us on notice. If the plaintiff wants us to remove right away, it's on them to serve us with something that discloses the amount in controversy. They're in the position to protect themselves. As Judge Johnston mentioned, the plaintiff sort of created the problem here by serving an ambiguous complaint, and what this court says about that is, well, yeah, that's on the plaintiff, and it's on the plaintiff to fix it by serving a complaint that will disclose subject matter jurisdiction and therefore put a defendant on the clock. Counsel, you've exceeded your time. Are there any questions? All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. Thank you, Your Honor. This case is argued and submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE